Good morning, and may it please the Court. My name is Paul Weiser. I'm an Assistant Attorney General appearing on behalf of the State of Washington, specifically Jeffrey Utecht, this morning. And with the Court's permission, I'd like to reserve five minutes for rebuttal time. Both claims on which the District Court granted relief were adjudicated on the merits by the State Courts of Washington, and are therefore subject to the standard of deference under Section 2254D. Mr. Garnett has not established, either in the District Court or in this Court, that the State Court decisions were objectively wrong in any way, either contrary to or an unreasonable application of clearly established U.S. Supreme Court holdings. The District Court was therefore without power to grant the writ, and we'd ask that this Court reverse the District Court. Now with respect to the jury instruction claim, just so I make it abundantly clear, it's our position that the instructions that were given, including instruction number eight, was absolutely 100% correct under Washington State law. It is permitted for a Washington jury to reach a general verdict on a charge of first-degree murder, which is premised on alternative bases, such as felony murder and premeditated murder. That's why the State Courts held that the instructions were proper, and we know from Schad v. Arizona that that view of Washington State law does not violate due process. And that's why Defense Counsel did not object to instruction number eight, and the defense-proposed version of instruction number eight was itself confusing. It did include some language in it that the choice of which alternative the jury chose need not be unanimous. However, the remainder of the instruction was somewhat confusing, and it wasn't given by the Court, but Defense Counsel did not object to the giving of instruction number eight. Now, it is true, as the District Court observed, that aggravated first-degree murder and felony murder are two separate crimes under Washington State law, and that's because aggravated murder is a special subset of premeditated murder. But that somewhat misstates the issue, because instruction number eight asked only if the defendant was guilty of murder in the first degree. It said nothing about aggravating circumstances. Aggravating circumstances finding came later, after the finding on the general verdict. The Washington Supreme Court Commissioner's ruling on this claim was a reasonable one, and there is no reasonable likelihood that the jurors in Mr. Garnett's case mixed and matched elements with respect to aggravated first-degree murder and reached a hybrid verdict with respect to aggravated first-degree murder. We know that because the jury expressly said that it was finding Mr. Garnett guilty of premeditated murder in the first degree. First of all, in their special verdict form A, they were asked, Were you able to unanimously agree, beyond a reasonable doubt, that the defendant, James Garnett, committed premeditated murder in the first degree, as stated in alternative A in instruction number eight? And the answer, of course, was yes. That's excerpt of Record 254. The very next special verdict form, the jury had to affirm that they had found him guilty of premeditated murder in the first degree, alternative A, and that they did so beyond a reasonable doubt. So I think there's no possibility, certainly no reasonable possibility, that the jurors were confused with respect to aggravated murder either. So we're really looking at, in the context of the whole of this particular case, was there a substantial and injurious effect or influence on the jury's verdict? Your Honor, that would be correct if there had been any error in the instructions, and it's our position that there are no errors at all, so we need not look to whether there's any injurious effect. Mr. Garnett's theory in this case would require a conclusion that the jurors violated their oaths and falsely stated that the verdict was unanimous and beyond a reasonable doubt. There's just no reasonable likelihood of that in light of the answers to special verdict form A. And there's no evidence of any juror confusion, and there's no ambiguity, and jurors are presumed to carefully follow their instructions, all of them. The Washington Court's rulings on this claim were neither contrary to nor an unreasonable application of Supreme Court precedent, and I believe that the case of Waddington v. Sarasot is particularly apt. The instructions here followed Washington law, as the Washington Court stated, and I believe that the state court decisions in that respect are entitled to deference. Now, turning to the other claim that Mr. Garnett raised, the prosecutorial misconduct claim, in every criminal trial, the odds are that one of the attorneys for either side will at some point pose an awkward or an ambiguous or otherwise objectionable question, and that is what happened here. But it's not a due process violation under the governing Supreme Court standard. It's not a due process violation unless the question was so prejudicial and so incurable that it renders the entire trial unfair. And as this court stated in Ortiz v. Stewart several years ago, where an allegedly improper question is an isolated or one-time incident, this court has refused to find a due process violation. Isn't it a due process argument that the defense made to the Washington Supreme Court on this particular matter? I believe it was, Your Honor. It was raised under the general rubric of prosecutorial misconduct and denial of a fair trial. I believe it was presented as a due process claim to the Washington courts. Counsel, suppose we agree with you on the two claims that you've discussed on the cross-appeal. Are we nonetheless required to remand for an evidentiary hearing given Judge Peckman's statement on the Brady claim, that with respect to Mr. Garnett's fifth ground for relief, the court finds that there are gaps in the record, necessity, and evidentiary hearing that concludes that it need not hold an evidentiary hearing at this time, presumably because it was granting relief on the other two grounds. And suppose we agree with you we need to send it back to have the evidentiary hearing on the Brady claim. Yes, Your Honor. I'm sorry, Your Honor. It's my position or it's our position that the court should remand for further proceedings. That would be among those further proceedings. Judge Peckman has determined that there needs to be an evidentiary hearing on that one claim, that there are still some hanging inferences out there that need to be resolved. So in any event, where we follow what you would do, we would still be remanded because those are not in front of us, correct? That's correct, Your Honor. We chose not to raise that in our appeal. Obviously, we could have, but we didn't want to load the court down too much. And I hope I get some credit for lightening the court's load there. So is the only outstanding claim the Brady claim? That was the only unresolved claim in the lower court proceedings. Yes, Your Honor. I believe that with respect to the question, the awkward question that was posed to Ms. Blanco, the subject matter was proper as the state courts have concluded, but that it was improperly worded. Now, was it misconduct? Did the state courts actually use those magic words in describing it? I don't believe so. I don't believe that that's necessarily material to concluding that this was a due process violation or not. It was a question. I mean, when the judge ruled on the particular matter, what the judge really said, as pointed out by your opposition counsel, did not actually address the question in front that was subject to the problem. There was another question second to that, which was the one where if you read directly what the judge said, it only addressed the second question. How do we deal with that? Yes, Your Honor. If we read it like an algebraic formula, then it missed what was technically the last question. I think what everybody was referring to at trial was the offending question about the tape and whether it described how Mr. Garnett killed Mr. DiOrio. But everyone at trial knew that the last question was the offending question. In fact, when the objection came up at trial by defense counsel, and that's at Excerpt of Record 110, defense counsel said, Your Honor, I'm going to object to that question. And that followed the follow-up. Now, what was defense counsel referring to? Well, we know what defense counsel was referring to because he had no objection to the curative instruction that Judge Cook gave to the jury at that time. And if there was any hanging inference or problem at that point, I think the prosecutor clarified that by returning to the same subject matter and just restating the question a little better instead of saying ---- They had a break. Yes, Your Honor. It was a recess. It was about ---- Right after the exchange. Correct. It was about five or ten minutes duration. I guess I don't know from the transcript how long they were out. But the jury went out. They came back. Prosecutor returned to the same subject matter, posed the question correctly, and did so without any objection from the defense. So whatever problem may have occurred on the record to that point, even if it had not been cured by the curative instruction, it was a minor incident, a blip on the radar screen of this trial. At that point, it was a nine-day trial. This was the ninth day of trial that this occurred. We believe that the Court of Appeals decision, Excerpt of Records 78-79, reasonably concluded that the trial judge handled this situation appropriately. It was reviewed under a standard, legal standard that's compatible with the governing Supreme Court standard. A due process standard, correct? A due process standard, yes, Your Honor. We believe that the district court's decision, which conducted a de novo review of the transcript, should be reversed. It's not supported under Section 2254-D, and that the district court's decision should be reversed. Thank you. I'd like to reserve my remaining time for rebuttal. Good morning. May it please the Court. My name is Jennifer Wellman. I represent James Garnett. The district court soundly rejected the same arguments that the State is urging Your Honors to consider today. And with the time allotted, I'd like to make two specific points. One, telling the jury that there is a firsthand account of how James Garnett killed Dan DiIorio when no such evidence exists is not an ambiguous comment. It's focused, it's unambiguous, and it's strong in a circumstantial case, and it warrants relief. Number two, telling the jury that it can convict James Garnett of aggravated first-degree murder without unanimously finding each and every element of the offense is fundamentally incompatible with the due process requirement that the State prove beyond a reasonable doubt every essential element of the offense. Let me ask you a question. Yes. I didn't find any objection to the breadth or the scope of the cautionary instruction given by the DJ at the time of trial. Did you? May I clarify? Which issue are you referring to? I'm talking about the issue about what the prosecutor said. When the district court came back with the cautionary instruction in order to do what needed to be done to cure the problem, no one objected to the breadth or the scope of the instruction. That's correct. However, the defense attorney did articulate his objections to what was said. He filed for a mistrial, and whether or not the instruction was sufficient at that time and warranted a mistrial is different from the question before your honors today. In assessing whether or not – Just a minute. I guess my worry is if there was no objection to the breadth and the scope of the cautionary instruction and no objection to what the situation was with the cross-examination, what is the standard review that I have it here? First, I think that mischaracterizes how the objection unfolded. He did object to the question. He objected. He said it had to be stricken. And the court agreed with him that there was no basis for it. The question was improper. And in assessing whether or not the instruction cured the error is not a question of whether there was ineffective counsel or a waiver. Well, just a minute. If I'm really looking at what we have here on prosecutorial misconduct and I'm really looking at the challenge cross-examination question, we have a cautionary instruction that was given. We have a judge who was there on point, who was in a far better position to assess what's going on at that point than I am. That judge gave a cautionary instruction, sustaining the objection with the jury sitting right there, gave the cautionary instruction, and then there was no objection from counsel. So you're suggesting that I ought to do more than clear error analysis here? No, Your Honor. I think what the Ninth Circuit precedent and the Supreme Court case law says is you look and see whether that instruction did cure the error. And our position is one way of looking at it is compare it to that in the Donnelly case where the judge actually brought the challenged remark to the attention of the jury and said there's absolutely no evidence supporting that comment by the prosecutor and admonished the jury to ignore it completely. The second point is that this is the kind of mistake, Your Honor, that the district court recognized is addressed in Bruton and Arizona v. Fulamonte regarding a confession. Did Bruton really squarely address the situation in your case? Pardon me? Did Bruton really squarely address the new standard, the factual situation in your case? The relevance of Bruton in our case is simply as an example of why the mistake here is so egregious. The district court actually applied the correct standard, which I think is set out most clearly in Furman v. Wood, where you look at the instructions themselves as well as the strength of the case. And in making that assessment, the district court cited Bruton for the understanding of how egregious the comment was here. There are only two possible interpretations of this comment. Either there's a confession out there that James Garnett killed Dan DiIorio or there was a witness to James Garnett killing Dan DiIorio. Well, let me ask you another question. If Bruton was really a great case to rely upon, why was that never presented to the Washington courts? Why was Bruton? It's a Bruton issue. It's actually what is relied upon is the correct legal standard that whether it's so effective. Do you agree that the correct legal standard is then, out of Donnelly, a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury sitting through a lengthy exhortation will draw that meaning from the plethora of less damaging interpretations? Isn't that Donnelly's holding? That is. And if you look at the district court's analysis, she actually goes through Donnelly and Dart and that line of cases and she looks at the strength of the case as well as the instructions. And she uses Bruton and Arizona v. Fulamonte only as examples in that assessment of understanding the significance of the error. When counsel made the argument to the Washington courts, did he argue that the state's curative instruction was inadequate? My client was pro se in the state courts. I understand. There is no waiver. He did make all of the arguments. I didn't ever see anything that he was arguing that the curative instruction was inadequate, that it failed to address an actual question. Your Honor, my understanding is that all of the record is that he preserved the issue below and the state appellate court that addressed it presumed misconduct in its analysis and then it looked at the strength. It did not look at the strength of the case. It did not appreciate the significance of the error. The only principle it identified for this was that juries are presumed to follow the instructions, and that's the important part. There was no allegations of waiver. In terms of the strength of the case, the state focuses on that significantly, but I think it's important for your honors to recognize there was really only about, at most, six days of testimony in this case. The first three days of that first week were motions in limine, opening arguments, and voir dire. There was one day on that Thursday of testimony, and then they broke early on Friday so the judge could see the crime scene. The second week had similar delays and very little full days of testimony. More importantly, in that period of time, the evidence presented was really all about the crime scene, Dan D'Orio's body after it was found, and Dan D'Orio's character. The state rested on trying to poke holes in James Garnett's statements that he did not do this and his whereabouts. There was no eyewitness account. There was no forensics linking this client to the murder scene or the murder itself. So the state's reliance on these cases where they say this was one moment in time is really misleading, and also in those cases, none of them stand for the proposition that one comment cannot rise to a constitutional infirmity. And in not one of those cases did it involve a case where the prosecutor has told the jury that there is a confession or a firsthand account somewhere out there regarding this defendant. So I think it was obvious to the jury. There are other recordings. You can look at the dialogue. What was the evidence that suggested your client was the killer? Pardon me? What was the evidence that suggested your client was the killer? It was all circumstantial evidence. What was it? Circumstantial evidence can be just as good as direct evidence. That's correct. Depending on the strength of it. That's correct. Well, there were the tapes. So let's put it in your words. What was the circumstantial evidence that suggested your client was the killer? That he was present with the client when his mother last saw him, and they talked about on the tapes, his wife's tapes were incriminating. We've challenged the admission of those as well. And they poked holes in where he said he was, but nothing directly linked him to the crime scene or the murder itself. With respect to the erroneous jury instruction, I think there... Do you agree that the erroneous jury instruction is correct Washington law? No, I don't. And I think... Isn't it a part of the Washington jury instructions to give it as it was given? No, Your Honor, it is not. To answer your question, I think we have to stand back first and realize that the parties are in agreement, that the juries have to be unanimous as to the crime charged. Shad does not say anything different than that. And what James Garnett was charged with in an amended information was aggravated first-degree murder. The state concedes that that is distinct from felony murder. So unlike the case in State v. Fortune, where at issue is premeditated murder without aggravating factors and felony murder, at issue in James Garnett's case were two distinct offenses that the instruction did not make clear to the jury. They had to decide individually and be unanimous as to the elements of both. Did the defense counsel ever object to instruction number eight? He did. He actually... Where did it win? He submitted a different instruction, and they had two that looked similar, and the judge chose one that he felt was less misleading. Right. I didn't see any objection by counsel. Again, he submitted... First of all, an objection was not required for this particular issue. Number two, he did... It wasn't required to object to an instruction on this particular issue given what? I mean, under Washington State law, he surely had to have an objection. Are you just saying he didn't need to have an objection given that we're now on a habeas review? Is that what you're saying? No, I apologize. So what I'm saying is that the court's job here today is to see whether or not the instruction was clear that the jury had to be unanimous as to the crime charged. And in that assessment, if your honors believe that the defense counsel was ineffective in not making a better objection to the situation, it can be one of the factors your honors considers in making it, but there's no waiver here in terms of being dispositive of the claim. The first question... Well, I guess why I'm trying to go is it seems to me that whether the law was correct of a jury instruction that could be given under Washington State law gives me one standard to review. Whether defense counsel objected to the instruction gives me another standard. Then the last question is if all of those were the same, then I find in the context of the whole of the particular case, has there been a substantial and injurious effect or influence on the jury's verdict? I'm just trying to come to the standard that I'm to apply. That's why I ask you these questions. Right. And the last question is where you want to go, and I understand that, but that's why I ask you these other questions. It seems to me we have different standards on giving the questions I've asked. I think what I can say from the record is that the defense presented the correct instruction that should have been given, and I think if your honor looks at the state case, State v. Brett, which actually included aggravated first degree murder and a felony murder case, and at issue there were the instructions that were given. It clearly delineates that it had to be clear that the jury had to be unanimous as to premeditated intent to kill as well as the aggravating factors, and the instructions there were correct. Is that pretty clear that they were? They were asked the question in the special verdict, and the question said, do you unanimously find that it's premeditated? And they said yes. My problem with that, your honor, is that jumps to one document that seems to support the state's position without going through the requisite analysis, which is one, does the challenge instruction misstate the law? I think first you have to look at the challenge instruction. The challenge instruction both talks, and it's two ways of getting to the same crime, which is first degree murder. And that's the error, your honor. This case did not involve premeditated murder or felony murder. It involves aggravated felony murder and felony murder. The special verdict findings is what put this conviction into the category of aggravated. Except what your honor needs to look at is did it cure the error? Did it cure the challenge instruction? And nothing in that says, if and only if you find premeditation, go to these questions. I realize that it lends some support to the state, but it doesn't solve the question. And the state's... The problem, though, is that we're on Edpo review, and I don't know how we can say that the Washington Court of Appeals decided otherwise in an objectively unreasonable fashion. Well, I think... The instruction's permissible under state law, and the verdict form was permissible. Well, I obviously disagree with your honor, and I think if your honor looks closely at the general verdict form that's at ER 253, you see there that nothing clarifies that what the jury is finding is premeditated murder. It goes on, though. But you go to the verdict form A, and they check the box, yes, to premeditated murder. And you go to verdict form B. Your honor, I think if you look closely, it says, we the jury find the defendant guilty of the crime of murder in the first degree. They treated this case as if it was a murder in the first degree case, not an aggravated murder case. I encourage your honors to look at state v. Brett. Your case law tells you that you should look in figuring out whether the instruction is air. You look to what the state should have done. They did not do it in this case. And I think one special verdict form out of everything did not cure or did not tell the jury that they had, in order to find him guilty as charged as an aggravated first degree murder, that they had to be clear that that was premeditation. All right. Thank you, counsel. Thank you. Just so there's no confusion, we're not arguing that defense counsel's failure to object somewhat constituted ineffective assistance of counsel or that the court should analyze it under that standard. We are arguing it just to show that it shows the most interested person or interested party at trial, defense counsel, the one who caught this improper question in the first place during the prosecutor's cross examination, brought it to the attention of the trial court, received a curative instruction, was satisfied with the instruction that was given by the court. And I would, in response to some of the questions by Judge Smith, point out it was not raised on appeal and Mr. Garnett was represented by counsel on direct appeal. It was raised on appeal. The challenge to the prosecutorial misconduct, that claim was raised on direct appeal. There was no challenge to the breadth of the curative instruction that was given. Well, you know, the trial court judge here said in comment after the question, after the objection was made, I guess they were in their conference and the trial judge said, well, you know, this borders on the need for a mistrial. He obviously considered it pretty serious. She did, Your Honor, and I think that's why she entertained the motion by the defense for a mistrial. After the conclusion of the presentation of the evidence, but before the jury was instructed, there was a two-pronged motion for mistrial brought by the defense, one of the bases being the prosecutor's examination of Ms. Blanco. And the trial court at that time, and you can review the transcript of that hearing, where the trial judge did suggest that although the question was improper, it was at least an inference that was based upon the evidence and therefore was not, as she termed it, mistrial material. What was the, you know, I asked counsel what was the evidence, the circumstantial evidence that suggested he was guilty of this offense? Your Honor, I think it was a series of amazing coincidences if Mr. Garnett had not been involved. First of all, he admitted that he was the person that came by and picked up Mr. DiOrio at his home, took him out for beer, even though Mr. DiOrio already had a six-pack of beer, took him to Evelyn's Tavern several miles away, and that's the very last time Mr. DiOrio is seen, until his body is found in a shallow grave about a ten-minute drive away from there. Did anybody see them leave the tavern together? There were a number of people who saw them leaving the tavern together. There were different reports, though. I won't represent to the court that there were no discrepancies in the description of the people, and, in fact, I think at least one person said that there was a woman that left with them at the same time. So it was not as though there was a pristine case on that, but it was acknowledged by Mr. Garnett himself that he, in fact, did go to that tavern with Mr. DiOrio on September 14, 1999. So he could not argue that he was in another part of the country or he wasn't there or he doesn't even know who Dan DiOrio is. He knew him very well. Wasn't there also evidence that Mr. DiOrio was flashing around the $7,000 and then Mr. Smith shortly after that managed to make his rental payments? That's correct, Your Honor. That he was able to make before? That's correct. Mr. DiOrio had that habit of flashing all of his worldly goods with him wherever he went because it made him feel important, and he had a stack of $8,000 to $10,000 that he carried with him everywhere. That was well known. It was curious that on September 14, 1999, was the same day that Mr. Garnett was able to pay the rent, the $600 rent, actually I think it was $500 plus a late fee, paid that night, just a couple hours after he had been out with Mr. DiOrio. This was a guy who was unemployed, his wife was unemployed, they were chronically short of cash, always pawning a lot of items, especially electronics. Did he pay it in cash? He paid in money orders and it was established, it was established, Your Honor, that the money orders were obtained at a, I believe it was Thrifty Foods is the name of the place. They were sold the night of the 14th of September, 1999, somewhere around 8 p.m. Two different money orders each for $300. The person at the store could not verify that Mr. Garnett, in fact, was the person who received them. I think she recognized Mr. Garnett by sight because he was a frequent customer of the store, but beyond that, just a series of amazing coincidences if it was not Mr. Garnett. All right, thank you, counsel. Thank you, Your Honor. We'll submit Garnett v. Morgan.
judges: Wardlaw, Paez, Smith N. R.